# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE B. MURRAY,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>PACHECHO, et al.,<br><br>　　　　　Defendants. | 1:17-cv-01542-LJO-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM**<br>**(ECF No. 9.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

## I.　BACKGROUND

Maurice B. Murray ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On November 20, 2017, Plaintiff filed the Complaint commencing this action. (ECF No. 1.) On August 3, 2018, the court screened the Complaint and issued an order dismissing the Complaint for failure to state a claim, with leave to amend. (ECF No. 8.)

On August 31, 2018, Plaintiff filed the First Amended Complaint, which is now before the court for screening. 28 U.S.C. § 1915A. (ECF No. 9.)

1

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at the California Substance Abuse Treatment Facility and State Prison (SATF) in Corcoran, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR), where the events at issue in the First Amended Complaint allegedly occurred. Plaintiff names as defendants Nurse Pacheco, Nurse Brown, Dr. Chang, Dr. Scharffenberg, Dr. Hrabko, C. Cryer (Chief Executive Officer), and Medical Health Care Services (at SATF) (collectively, "Defendants"). Plaintiff alleges as follows.

Nurse Pacheco refused to have Plaintiff sent to the medical facility at SATF to see the attending doctor about sores and lesions that were spread over Plaintiff's body and bleeding. Nurse Pacheco made a visual determination of what the problem "was not," but she could not determine what the condition was or what was causing it. (ECF No. 9 at 3:7.) Plaintiff contends that Nurse Pacheco should have had him immediately sent to the medical facility because she saw the bleeding and the number of lesions on Plaintiff's body. Plaintiff contends that Nurse Pacheco's refusal to send him to the doctor on duty set off a chain of denials in which each of the named defendants played a very significant role.

Nurse Brown saw Plaintiff for the same condition that Nurse Pacheco had seen. Nurse Brown saw the condition, which was progressing without treatment. For the second time Plaintiff requested to see a dermatologist. Nurse Brown did not know what the condition was or how to treat it. Plaintiff contends that Nurse Brown should have sent him to the medical facility on the prison grounds to be seen by a doctor as the condition was worse than when Plaintiff saw Nurse Pacheco. Nurse Brown just gave Plaintiff some Hydrocortisone and told Plaintiff to submit another medical slip if the problem continued. Plaintiff contends that this inaction by Nurse Brown contributed to and continued the chain of denial of medical care for what was obviously a skin condition that needed immediate medical attention. Plaintiff contends that anyone outside the medical field would know that Hydrocortisone should not be used on open wounds or cuts.

Dr. Chang made no effort to have Plaintiff seen by a dermatologist. Dr. Chang had sufficient information and had seen Plaintiff's condition when Plaintiff was sent to Dr. Chang for a biopsy at the medical facility at SATF. Afterward, when Plaintiff saw medical staff on the prison yard he was told that a referral to a dermatologist was not going to be made and that Dr. Chang's report on the biopsy was lost. The next time Plaintiff went for medical treatment, medical for the same condition that was now all over his arms, shoulders, and legs, he was told that the biopsy results showed "fungus." (ECF No. 9 at 5:14-15.) The next time Plaintiff went, he was told that the biopsy results showed Lichen Simplex Chronicus. And the next time he was told the condition was Seborrheic keratosis. Dr. Chang failed to place a medical order for Plaintiff to see a dermatologist or skin specialist even with the knowledge of multiple diagnosis

of Plaintiff's biopsy. Dr. Chang's inaction continued the chain of denial of medical care. By now there was a pattern of denial by the named Defendants.

Dr. Scharffenberg saw Plaintiff for the skin condition that Plaintiff had now complained about for several months. Dr. Scharffenberg did not know what the condition was or how to treat it. The fact that Dr. Scharffenberg saw Plaintiff's medical condition should have prompted him to call for transport to the medical facility for an examination by the doctor on duty. Later, Plaintiff made an emergency visit to medical for his scrotum sack, which was swollen all the way up to the head of his penis, literally the size of a grapefruit. Dr. Scharffenberg made absolutely no effort to refer Plaintiff to the institution hospital for examination or treatment, and he did not have an explanation about why Plaintiff had the condition. He simply gave Plaintiff a couple of days supply of Benadryl and sent Plaintiff on his way. Plaintiff told Dr. Scharffenberg that he believed the problem with his scrotum was a result of his ongoing skin condition, but the doctor dismissed that notion.

Dr. Hrabko also refused to order or recommend that Plaintiff be seen by a dermatologist or skin specialist. He saw the skin lesions more than once and the effect they were having on Plaintiff's skin. He knew of the multiple different results of the biopsy and yet failed to order a new biopsy or have Plaintiff seen by a specialist. He was aware of Plaintiff's requests and medical forms sent to the Medical Health Care Service, as well as two medical 602s filed to the California Correctional Health Care Services requesting to be seen by a dermatologist or skin specialist, which were all denied. Dr. Hrabko continued the chain of denial and instructed Plaintiff to notify medical staff if the problem continued.

C. Cryer, Chief Executive Officer at SATF, denied Plaintiff's request to be seen by a dermatologist, and also denied Plaintiff's health care appeal request which exhausted Plaintiff's administrative appeal process. Plaintiff contends that C. Cryer's denial strengthened the links of the chain of denials to follow. D. Cryer knew about Plaintiff's numerous visits to the medical office about his skin condition, as well as the denials of his requests to see a dermatologist. C. Cryer did not observe Plaintiff's skin condition, but his decision on Plaintiff's appeal intentionally interfered with Plaintiff's medical treatment. Plaintiff contends that Cryer's

decision to deny the appeal gave support and encouragement to other medical staff to follow when seeing Plaintiff for his condition.

Plaintiff requests monetary damages as relief.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"

///

///

Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or

reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.     **Eleventh Amendment Immunity**

Plaintiff names Medical Health Care Services of the California Department of Health Care Services as a defendant. Plaintiff is advised that he may not sustain an action against a state agency. The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state. Brooks v. Sulphur Springs Valley Elec. Co., 951 F.2d 1050, 1053 (9th Cir. 1991) (internal citations omitted); see also Tennessee v. Lane, 541 U.S. 509, 517 (2004); Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1997); Clark v. California, 123 F.3d 1267, 1269 (9th Cir. 1997). The Eleventh Amendment bars suits against state agencies as well as those where the state itself is named as a defendant. See Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Beentjes v. Placer Cnty. Air Pollution Control Dist., 397 F.3d 775, 777 (9th Cir. 2005); Savage v. Glendale Union High Sch., 343 F.3d 1036, 1040 (9th Cir. 2003); see also Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) (stating that Board of Corrections is an agency entitled to immunity); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (concluding that Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity). Because Medical Health Care Services is a state agency it is entitled to Eleventh Amendment immunity from suit. Therefore, Plaintiff fails to state a claim against defendant Medical Health Care Services.

### B.     **Appeals Process**

Plaintiff's allegations against defendant C. Cryer pertain to Cryer's review and handling of Plaintiff's inmate appeals. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances

create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing a prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).; Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

Thus, Plaintiff's allegations that defendant Cryer failed to properly process his appeals fail to state a cognizable claim.

### C. Medical Claim -- Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091,

7

1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course

of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff alleges that he suffered from bloody lesions on his skin and significant swelling of his scrotum. These allegations are sufficient to demonstrate serious medical needs. However, Plaintiff fails to allege any facts demonstrating that any of the Defendants ignored his medical needs or otherwise responded unreasonably. Plaintiff alleges that he saw five medical professionals at different times who examined him and offered him Hydrocortisone or Benadryl, and told him to report back if his condition continued to worsen. Plaintiff was sent for a biopsy with varying results, showing either a fungus, Lichen Simplex Chronicus, or Seborrheic keratosis.

There are no facts showing that any of the medical professionals considered Plaintiff's condition such as to require a referral to a dermatologist, skin specialist, or institution hospital for examination or treatment. The fact that they all agreed not to refer Plaintiff elsewhere to treat his condition, even though they were unsure what caused it, does not show that they worked together or created a chain of denial. Plaintiff does not allege facts showing that any of the Defendants made an agreement or had a meeting of the minds when deciding how to treat Plaintiff. Instead, Plaintiff's allegations support an inference that each of the Defendants independently decided that Plaintiff's condition was not serious enough to require a specialist. Even assuming that each Defendant knew Plaintiff's medical history and the course of treatment taken by the other medical professionals, Plaintiff alleges no facts showing that they did not come to independent decisions after examining Plaintiff. Plaintiff has not shown that any of the Defendants was deliberately indifferent to Plaintiff's medical needs. Plaintiff has shown, at most, that he disagreed with the Defendants about his medical treatment. A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim.

Therefore, Plaintiff fails to state a medical claim in the First Amended Complaint against any of the Defendants.

## V. CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims in the First Amended Complaint against any of the named Defendants. Therefore, the court shall dismiss the First Amended Complaint for failure to state a claim. The court previously granted Plaintiff leave to amend the complaint, with ample guidance by the court. Plaintiff has now filed two complaints without stating any claims upon which relief may be granted under § 1983. The court is persuaded that Plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state a cognizable claim. "A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. This case be DISMISSED, with prejudice, for failure to state a claim upon which relief may be granted under § 1983;
2. This dismissal be subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g); and
3. The Clerk be directed to CLOSE this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen days** of the date of service of these findings and recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 22, 2019**         **/s/ Gary S. Austin**
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE